**FILED - LN**

April 2, 2009 10:29 AM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

HOLLY RINTALA
GORDON RINTALA
    Plaintiffs

-vs-

LAW OFFICE OF CURTIS BARNES, PC,
KEVIN GRAVES,
PATTI ARELLANO,
    Defendant

**2:09-cv-79**

**Robert Holmes Bell**
**U.S. District Judge**

Case No.
Hon.

## COMPLAINT & JURY DEMAND

*Holly Rintala and Gordon Rintala state the following claims for relief:*

### Jurisdiction

1.    This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2.    This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3.    The Plaintiffs to this lawsuit are as follows:

    a.    Holly Rintala.

    b.    Gordon Rintala.

4.    The Defendants to this lawsuit are as follows:

    a.    Law Office of Curtis Barnes, PC ("LOCB") which is a corporation doing business

in Michigan.

b.   Kevin Graves ("Mr. Graves") who is a debt collector and at all relevant times acted agent of LOCB.

c.   Patti Arellano ("Mrs. Arellano") who is a debt collector and at all relevant times acted agent of LOCB.

## Venue

5.   The transactions and occurrences which give rise to this action occurred in Houghton County.

6.   Venue is proper in the Western District of Michigan.

## General Allegations

7.   Some time prior to March 31, 2008, LOCB was engaged by HSBC to collect a debt allegedly owed by the son (Ryan Rintala) of Plaintiffs Holly Rintala and Gordon Rintala; alternatively some time prior to March 31, 2008, LOCB purchased a debt previously held by HSBC which was allegedly owed by the son (Ryan Rintala) of Plaintiffs Holly Rintala and Gordon Rintala.

8.   The debt in question arose from the purchase of a motorcycle through HSBC.

9.   On or about April 10, 2008 Mr. Graves from LOCB communicated with Ryan for the first time.

10.   In that communication, Mr. Graves threatened Ryan with a variety of non-judicial remedies including repossession of goods which were not subject to any lien and execution of everything he owned unless he immediately authorized charges on his parent's credit card.

11.   Ryan informed Mr. Graves that he could not do that without his parents authority.

12.   Mr. Graves  initiated a three-way conference call with Mrs. Rintala in order to secure

payment on her credit card.

13.    Neither Mrs. Rintala nor her Husband (Gordon) were liable on the debt to HSBC.

14.    Once connected with Mrs. Rintala, Mr. Graves informed Mrs. Rintala that her son was "in

trouble" and insisted on immediate payment for the account from her.

15.    Mr. Graves restated a number of threats to the financial well-being of her son unless she

immediately authorized payment.

16.    Mr. Graves specifically threatened an immediate lawsuit against Ryan unless she agreed to

pay the debt.

17.    Mr. Graves informed Mrs. Rintala that he had found out that Ryan was an authorized user

for a Discover Card with an available credit limit of $10,000, and a Chase Card with an

available credit limit of $24,500.

18.    Each of those accounts were attributable to Mr. and Mrs. Rintala.

19.    Mr. Graves proceeded to attempt to collect the debt from Mrs. Rintala, stating that they

should pay for their son's debt with one of these cards.

20.    Mr. Graves effectively threatened Mr. and Mrs. Rintala with legal action by advising her

against fighting the debt, because if the matter went all the way to court they would have no

leg to stand on.

21.    Mr. Graves further advised that a judge would look upon the Rintala's ability to pay off the

debt with one of these credit cards and ask," Why didn't you just pay it - the funds were

available."

22.    Mr. Graves informed Mrs. Rintala that the judge would then rule in favor of Mr. Barnes, and

the Rintalas would end up paying over double the amount in court and related legal fees.

23.    Mr. Graves said if a judgment like this was ever taken against Ryan, he would be ruined

financially for life - would never again be eligible for a car or home loan.

24.    Mr. Graves advised Mrs. Rintala to pay immediately with one of the credit cards.

25.    After learning that over $3,000 fees had accrued Mrs. Rintala questioned those fees, and Mr.

Graves informed her that she was lucky that there were not more fees charged.

26.    Having received no prior notice of the call or proof that the debt was owed to LOCB or

identifying LOCB as an agent of a legitimate creditor of her son's, Mrs. Rintala informed Mr.

Graves that she was not comfortable providing her personal banking information on a cell

phone to someone she had no identification or documentation from.

27.    Mr. Graves yelled "ARE YOU KIDDING - NO LAWYER OR JUDGE WOULD STAND

FOR SOME STUPID EXCUSE LIKE THAT!"

28.    Mr. Graves informed Mrs. Rintala that he would allow one day for the funds to be available

through her checking account, impliedly threatening further action which he had neither the

authority or ability to take.

29.    Mr. Graves, then demanded the routing and account numbers to Mrs. Rintala's bank account.

30.    Mrs. Rintala provided this information.

31.    Mr. Graves then requested three references from Mrs. Rintala.

32.    Ryan could not give this information without getting off the phone, where he would be able

to access the files stored in his cell phone.  Mr. Graves said, "What about a Mr. David

Jacobson - your son's uncle?"

33.    When Mrs. Rintala questioned how Mr. Graves could have access to such information, he

responded: "You would be amazed what type of information I have accumulated about you!"

34.   Mr. Graves ended the phone call with information about himself.  That he was "Mr. Graves - Direct Liaison to Attorney at the office of Curtis Barnes".  He gave his phone number as 866-477-8222 ext. 4203.

35.   After consulting with family friends and her personal banker, Mrs. Rintala cancelled the payment with her bank and took steps to stop the payment.

36.   On or about April 15, 2008, Mr. Rintala called LOCB to talk to Mr. Graves about the events of the prior week.

37.   Mr. Rintala  made contact with a receptionist at LOCB and identified himself as Ryan Rintala's father.

38.   Mr. Rintala  asked to speak with someone about the loan payment.

39.   After identifying the case, Mr. Rintala was informed that Mr. Graves  was in the Ohio office of LOCB  and he could talk to either Peter or Patty.

40.   Shortly thereafter, Mr. Rintala spoke with Patty Arellano.

41.   Mr. Rintala briefly explained the situation.

42.   In response, Ms. Arellano informed Mr. Rintala that payment would have to be made that same day to stop the matter from going to court.

43.   Mr. Rintala asked if LOCB had the title for the motorcycle.

44.   Ms. Arellano again threatened litigation unless prompt action was taken by Mr. Rintala.

45.   Mr. Rintala requested documentation, and that information be provided regarding LOCB's authority to collect and deliver a title for the motorcycle upon discharge of the debt.

46.   In a later conversation on April 28, 2008 Ms. Arellano reiterated her threats of suit, costs and fees against Ryan unless Mr. Rintala paid the debt for his son.

## COUNT I – Fair Debt Collection Practices Act (LOCB)

47.    Mr. and Mrs.  Rintala incorporates the preceding allegations by reference.

48.    At all relevant times LOCB  regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

49.    At all relevant times Mr. Graves regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

50.    At all relevant times Mrs. Arellano  regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

51.    LOCB is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

52.    Mr. Graves is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

53.    Mrs. Arellano is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

54.    At all times relevant to this complaint, LOCB sought to collect a "consumer" debt from Ms. and Mr. Rintala which was owed by their son.

55.    LOCB's actions to collect this alleged debt from Mr. and MrsMs.  Rintala violated the provisions of the FDCPA including: 15 U.S.C. §§ 1692d, 1692e, 1692e(1), 1692e(2), 1692e(5), 1692e(7), 1692e(10),  1692f, 1692f(1), and 1692f(6).

56.    Mrs. and Mr. Rintala have suffered damages as a result of these violations of the FDCPA.

## COUNT II  -- Fair Credit Reporting Act (LOCB)

57.    Mr. and Ms. Rintala incorporates the preceding allegations by reference.

58.    LOCB is user of consumer reports as contemplated by FCRA section 1681b.

59.    Upon information and belief LOCB – acting through Mr. Graves – obtained and used consumer reports relating to Mr. and Mrs. Rintala.

60.    LOCB did not have a permissible purpose for that use.

61.    LOCB impermissibly accessed and used the consumer reports of Mr. and Mrs. Rintala.

62.    Mr. and Ms. Rintala have suffered damages as a result of this failure to comply with the FCRA.

63.    LOCB's actions constitute a negligent violation of 15 U.S.C. 1681b of the FCRA in violation of 15 U.S.C. §1681n.

64.    LOCB's actions constitute a willful violation of 15 U.S.C. 1681b of the FCRA in violation of 15 U.S.C. §1681o.

## Demand for Jury Trial

65.    Plaintiffs demand trial by jury in this action.

## Demand For Judgment for Relief

66.    *Accordingly, Mr. and Mrs. Rintala request that the Court grant:*

    *a.    Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    *b.    Statutory damages.*

    *c.    Punitive damages.*

    *d.    Statutory costs and attorney fees.*

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By: _____
Ian B. Lyngklip (P47173)
Attorney For Holly Rintala
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
IanLyngklip@Att.Net

Dated: March 30, 2009